STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2023 KA 0445

STATE OF LOUISIANA

VERSUS

NELSON JOEL TORRES

*DATE OF JUDGMENT:* **NOV 0 9 2023**

ON APPEAL FROM THE TWENTY SECOND JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY, STATE OF LOUISIANA
NUMBER 11682020, DIVISION H

HONORABLE WILLIAM BURRIS, JUDGE

* * * * * *

Warren LeDoux Montgomery          Counsel for Appellee
District Attorney
Mathew Caplan
J. Bryant Clark
Covington, Louisiana              State of Louisiana


Jane Louise Beebe                 Counsel for Defendant-Appellant
Addis, Louisiana                  Nelson Joel Torres


* * * * * *

BEFORE: GUIDRY, C.J., CHUTZ, AND LANIER, JJ.

Disposition: CONVICTION AND SENTENCE AFFIRMED.

**CHUTZ, J.**

The defendant, Nelson Joel Torres, was charged by bill of information with one count of sexual battery of a victim under the age of thirteen years, a violation of La. R.S. 14:43.1. He pled not guilty and, following a jury trial, was found guilty as charged. The trial court denied the defendant's motion for new trial and motion for post-verdict judgment of acquittal, and sentenced him to eighty years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. The defendant now appeals, designating two assignments of error: (1) the trial court erred in assisting the prosecution; and (2) the trial court erred in denying the defendant's two motions for mistrial. For the following reasons, we affirm the conviction and sentence.

## STATEMENT OF FACTS

In June of 2019, when A.F.[1] was twelve years old,[2] she moved from Guatemala to the United States to live with her aunt, A.F.S., in Slidell, Louisiana. The defendant, who was A.F.S.'s boyfriend at the time, and several of A.F.'s relatives also lived in the home.

On the morning of October 25, 2019, when A.F. exited her bedroom, the defendant picked her up and carried her into his bedroom that he shared with A.F.S. The defendant put A.F. on the bed and took off her clothes. He then got on top of A.F., covered her mouth, and inserted his penis into her vagina. After the defendant was finished, he showered and left to visit his friends. A.F. then went to the bathroom and noticed that she was bleeding.

Upon arriving home from work around 10:30 a.m., A.F.S. found A.F. sitting at the table looking at a tablet. The tablet displayed inappropriate Facebook

---

[1] In order to protect the identity of the victim, we reference the victim and their family members by their initials. See La. R.S. 46:1844(W).

[2] A.F.'s date of birth is April 4, 2007.

2

messages between A.F. and the defendant. Upon noticing blood on the back of A.F.'s shirt, A.F.S. asked her if the defendant hurt her. A.F. began to cry and said the defendant sexually abused her.

With the help of a friend who spoke English, A.F.S. called the police. Detective Jeremy Bertucci with the Slidell Police Department met with A.F.S., A.F., and their friend, who described the incident and translated the Facebook messages between A.F. and the defendant. Detective Bertucci then obtained and executed search warrants for A.F.S.'s home, the defendant's phone records, and the defendant's Facebook records. After A.F. confirmed in her forensic interview that the defendant raped her, Detective Bertucci prepared and applied for an arrest warrant for the defendant.

The defendant was thirty-six years old on October 25, 2019.[3] He denied sexually assaulting A.F. or sending her inappropriate Facebook messages.

### ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, the defendant argues the trial court erred by assisting the prosecution during a bench conference, thereby violating his right to a fair trial. Specifically, the defendant contends that the trial judge improperly aided the prosecution when he stated that: (1) he wanted A.F. to identify the defendant; and (2) if counsel did not ask A.F. to identify the defendant, then he would ask her.

The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted. La. C.Cr.P. art. 772; *State v. Strickland*, 94-0025 (La. 11/1/96), 683 So.2d 218, 237. A trial judge may ask clarifying questions but must do so "in an impartial manner without impliedly commenting on the facts." *State*

---

[3] The defendant's date of birth is September 21, 1983.

3

*v. Burrell*, 561 So.2d 692, 702 (La. 1990), cert. denied, 498 U.S. 1074, 111 S.Ct. 799, 112 L.Ed.2d 861 (1991). See La. C.Cr.P. art. 772. The no-judge-comment rule is designed to safeguard the role of the jury as the sole judge of the facts on the issue of guilt or innocence. If the effect of a question or comment is to permit a reasonable inference that it expresses or implies the judge's opinion as to the defendant's innocence or guilt, this constitutes a violation of the defendant's statutory right to no-comment and thus requires reversal. *State v. Williams*, 2020-609 (La. App. 3d Cir. 10/20/21), 329 So.3d 885, 896; *State v. Broome*, 49,004 (La. App. 2d Cir. 4/9/14), 136 So.3d 979, 989, writ denied, 2014-0990 (La. 1/16/15), 157 So.3d 1127. To constitute reversible error, however, the effect of the improper comment must be such as to have influenced the jury and contributed to the verdict. *State v. Reed*, 2010-0571 (La. App. 1st Cir. 10/29/10), 2010 WL 4272897, at *3 (unpublished); see *State v. Glynn*, 94-0332 (La. App. 1st Cir. 4/7/95), 653 So.2d 1288, 1306, writ denied, 95-1153 (La. 10/6/95), 661 So.2d 464.

Upon the State's completion of A.F.'s direct examination, the trial judge asked all counsel to approach the bench. At that time, the following discussion was held:

> **[THE COURT]:** Either I'm going to ask it or either of you can ask it. I want it to be asked, if you don't feel like you should, that's certainly fine. But I'm going to, if either of you request to ask it, so that I don't ask questions, say as much. I want her to identify Nelson to make sure that we're all talking about the same person. And I understand that's rather sensitive because she's young. I think for my clarification, I would like for it to be. Because nobody has actually, to my recollection —
>
> **[THE STATE]:** No.
>
> **[THE COURT]:** — identified him. Would you rather do that or would you want me?
>
> **[DEFENSE]:** I would prefer the Court not ask a question if we can avoid that. I would also prefer the Court not direct or suggest that to the State to help improve their case.
>
> **[THE COURT]:** I'm not improving anything. I think I do have an obligation that any questions in my mind, even though

4

> I'm not the fact finder as far as guilty or not guilty, I need it straight in my mind. And I feel better, if he is found guilty, I'm doing the right thing as well. I'm not suggesting anything. I'm making sure everybody has a fair shot. And the record is complete for appeal. I will note the objection.
>
> **[THE STATE]:** She might say he is not.

Thereafter, the State resumed questioning A.F. on the record. The State asked A.F. if she recognized the defendant, who was sitting in the courtroom. A.F. responded affirmatively and identified the defendant by his first name, Nelson. She further confirmed the defendant was the man who hurt her.

On appeal, the defendant argues that the trial court erroneously intervened and assisted the State in proving its case against him, thereby violating his right to a fair trial. The defendant acknowledges that the trial judge did not make the comments in front of the jury, but contends that had the trial judge not intervened, he would have had a valid argument for a directed verdict because the State failed to prove his identity as the perpetrator.

Based on our review of the record, we cannot say that the trial judge's comments influenced the jury. As conceded by the defendant himself, the trial judge's comments were made during a bench conference outside the presence of the jury. There is no evidence in the record, nor does the defendant claim, that the jury overheard the comments or that the comments influenced the jury and contributed to the jury's verdict against the defendant. See *State v. Thomason*, 353 So.2d 235, 240 (La. 1977).

Prior to the judge's comments, A.F. repeatedly testified that "Nelson" was the person who hurt her, thereby impliedly identifying the defendant. We cannot say the judge made a comment on the facts, and he clearly did not express or imply his opinion as to the defendant's innocence or guilt. Finally, even if the State had failed to ask A.F. to identify the defendant, the trial judge would have been

5

permitted to ask A.F. because it was for the jury's clarification. See *State v. Coleman*, 2012-1408 (La. App. 4th Cir. 1/8/14), 133 So.3d 9, 22-23 (trial judge's question to witness during direct examination, in the presence of the jury, was not impermissible comment on the evidence, where judge was merely seeking clarification for the jury as to whether victim identified the defendant as the shooter). Therefore, we find that the trial judge's comments during a bench conference outside the presence of the jury do not constitute error.

Accordingly, this assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, the defendant argues the trial court erred in denying his two motions for mistrial after the State and a State's witness informed the jury that the defendant was incarcerated, and that these comments were prejudicial and violated his right to a fair trial.

Upon motion of a defendant, a mistrial shall be ordered when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by La. C.Cr.P. arts. 770 or 771. See La. C.Cr.P. art. 775. La. C.Cr.P. art. 771 provides:

> In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
>
> (1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
>
> (2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.

In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

Because the statements at issue are governed by La. C.Cr.P. art. 771, further discussion of La. C.Cr.P. art. 770 is pretermitted.[4] See also *State v. Dardar*, 2021-0860 (La. App. 1st Cir. 2/25/22), 340 So.3d 1110, 1119, writ denied, 2022-00533 (La. 5/24/22), 338 So.3d 1192.

The proper remedy for inappropriate remarks under La. C.Cr.P. art. 771 is an admonishment directing the jury to disregard the remark. *State v. Flowers*, 2016-0130 (La. App. 1st Cir. 9/19/16), 204 So.3d 271, 284, writ denied, 2016-1871 (La. 9/6/17), 224 So.3d 983. However, the court may grant a mistrial where an admonition is insufficient and the prejudicial remark makes it impossible for the defendant to obtain a fair trial. See La. C.Cr.P. art. 771; *State v. McIntosh*, 2018-0768 (La. App. 1st Cir. 2/28/19), 275 So.3d 1, 4-5, writ denied, 2019-00734 (La. 10/21/19), 280 So.3d 1175. A mistrial is a drastic remedy, which is warranted only if a comment or remark results in substantial prejudice to the accused. *State v. Mullen*, 2018-0643 (La. App. 1st Cir. 12/21/18), 269 So.3d 772, 787, writ denied, 2020-00408 (La. 10/6/20), 302 So.3d 529. The determination of whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of

---

[4] When a judge, district attorney, or court official makes an improper comment which falls under the provisions enumerated in La. C.Cr.P. art. 770, a mistrial is mandatory. La. C.Cr.P. art. 770 provides:

Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
    (1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
    (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
    (3) The failure of the defendant to testify in his own defense; or
    (4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.

a motion for mistrial will not be disturbed on appeal absent an abuse of discretion. See *Dardar*, 340 So.3d at 1119.

In the instant case, Ashley Myers, an investigator with the Department of Children and Family Services ("DCFS"), testified regarding her involvement in the case. On the day of the incident, Myers went to A.F.S.'s home to interview everyone who was present, including A.F.S., A.F., A.F.S.'s cousin, and A.F.S.'s two children. She then met with the defendant, law enforcement, and medical professionals involved in the case. The State later followed up on this statement, and the following exchange occurred:

| [THE STATE]: | . . . I think you said you interviewed the defendant, Mr. Torres? |
|---|---|
| [MYERS]: | Yes. |
| [THE STATE]: | And he was not present at the home when you did that interview? |
| [MYERS]: | No, he was not. I believe already incarcerated at the time. But when I interviewed him, he was incarcerated. |

Defense counsel immediately moved for a mistrial on the basis that the State was not allowed to present any evidence as to the defendant's incarceration. The State argued there was no overwhelming prejudice to the defendant, as the jury would eventually learn that an arrest warrant was issued for the defendant. The trial court denied the motion for mistrial, stating:

> I'm going to deny the request for a mistrial. Simply because obviously the jury knows that he was arrested, or else we wouldn't be sitting here in trial. And because there's no information as to any current status as an incarcerated individual or the duration of that incarceration or anything else, that would seem to prejudice Mr. Torres in the eyes of the jury.

Defense counsel asked the trial court to admonish Myers for mentioning the defendant being incarcerated. Rather than giving an admonition which would draw attention to the defendant's incarceration, the trial court suggested that the prosecutor "preface the question" in a way that would not elicit a response as to the

defendant's incarceration status. At that point, the bench discussion concluded, and the State resumed direct examination of Myers without further reference to the defendant's incarceration.

During the direct examination of the next State witness, A.F.S., the following colloquy occurred between A.F.S. and the State:

| | |
|---|---|
| **[THE STATE]:** | Okay. Before this attack happened, did you have any anger or hate towards Nelson? |
| **[A.F.S.]:** | No. |
| **[THE STATE]:** | Did you think that, before this attack, you and Nelson were in a happy relationship? |
| **[A.F.S.]:** | Yes. |
| **[THE STATE]:** | Have you profited or made money in any way from Nelson going to jail, for – I'm sorry. There's no evidence of that. I misspoke. From the allegation. Let me rephrase. |

Defense counsel moved for a second mistrial, arguing that the prejudicial effect of the second statement was cumulative. The State reiterated that the jury would learn of the arrest warrant issued for the defendant, there was no evidence of the defendant being arrested, and thus there was no prejudice to the defendant. The trial court again denied the motion for mistrial, stating that "common sense would indicate that on any [charge of this type], these jurors are going to know that he was arrested. And whether he bonded out or anything else, he certainly would have been in jail at some point." The trial court admonished the jury and told them to disregard the previous question asked by the State.

In *State v. Johnson*, 343 So.2d 155, 161 (La. 1977), the defendant argued he was entitled to a mistrial when the trial court, during voir dire, referred to the fact that the defendant had been incarcerated. Similar to the defendant's argument herein, the defendant in *Johnson* argued that the same principles which dictate that an accused not be tried in prison uniform also prohibit reference to his imprisonment. The trial court denied the motion for mistrial and admonished the

9

jury. In holding that a mistrial was not warranted under those circumstances, the Louisiana Supreme Court stated:

> An accused has the right to dress in civilian clothing at trial because prison attire might unduly connote guilt. The remarks complained of in the instant case merely drew attention to a prominent fact of the trial — that defendant had been formally accused of the crime for which he was being tried. Although the fact of accusation may be suggestive of guilt to some jurors, as the State argues in brief, it is an incident of trial from which the jurors simply cannot be insulated.

*Id.*

Likewise, in *State v. Robinson*, 2008-25 (La. App. 5th Cir. 5/27/08), 986 So.2d 716, 721, writ denied, 2008-1527 (La. 3/4/09), 3 So.3d 470, the State questioned the defendant about being incarcerated since his arrest. The defendant moved for a mistrial, and the trial judge denied the motion. *Id.*, 986 So.2d at 722. The court of appeal found no abuse of discretion in the trial court's denial of the motion for mistrial, noting that the prosecutor's remarks merely drew attention to the fact that the defendant had been formally accused of the crime for which he was being tried. *Id.*, 986 So.2d at 723.

We find no abuse of discretion in the trial court's denial of the defendant's motions for mistrial. The remarks at issue fell under the discretionary mistrial provisions of La. C.Cr.P. art. 771, rather than the mandatory mistrial provisions of La. C.Cr.P. art. 770. Thus, the defendant was not entitled to relief beyond an admonition unless the trial court found he was prejudiced by the remarks. See *State v. Jackson*, 396 So.2d 1291, 1294 (La. 1981). The defendant has failed to demonstrate that the references to his pre-trial incarceration were prejudicial to the extent that they deprived him of a fair trial. While the testimony elicited from Myers referred to the defendant's incarceration status, the statement was not a connotation of guilt but rather "an incident of trial from which the jurors simply cannot be insulated." See *Johnson*, 343 So.2d at 161. Likewise, the prosecutor's

10

question was not unduly prejudicial to the defendant. See *Robinson*, 986 So.2d at 722. The trial court's admonition to the jury to disregard the prosecutor's question referencing the defendant's incarceration cured prejudice, if any, to the defendant. See *Flowers*, 204 So.3d at 284-85; *Johnson*, 343 So.2d at 161.

As to Myers' comments, although defendant initially sought that the trial court admonish the jury, when it did not, defendant did not object. The State presented extensive evidence of the defendant's guilt via medical and forensic evidence, the testimony of the victim, A.F., text messages between the defendant and A.F., and the testimony of Detective Jeremy Bertucci, who prepared the arrest warrant for the defendant. Thus, any error in the failure of the trial court to admonish the jury as to Myers' comments was harmless. See *State v. Howard*, 2017-0779 (La. App. 1st Cir. 12/21/17), 2017 WL 6524547, *5 (unpublished), writ denied, 2018-0165 (La. 11/20/18), 256 So.3d 998 ("[T]he failure of a trial court to admonish the jury is considered harmless error when there is substantial evidence of the defendant's guilt.").

Accordingly, we are convinced that any passing references to the defendant's incarceration was highly unlikely to have affected his substantial rights. See *State v. Caminita*, 2016-0121 (La. App. 1st Cir. 9/16/16), 203 So.3d 1100, 1106, writ denied, 2016-2045 (La. 9/6/17), 224 So.3d 988.

As stated by the Louisiana Supreme Court in *Johnson*, remarks referring to the defendant's incarceration merely draw attention to the obvious fact that cannot be avoided by the jury — that the defendant was formally accused of the crime for which he is being tried. *Johnson*, 343 So.2d at 161. Therefore, the defendant was not deprived of his right to a fair trial, and the trial court did not abuse its discretion in denying the defendant's motions for mistrial. Accordingly, this assignment of error is without merit.

11

## DECREE

For these reasons, we affirm the conviction and sentence of defendant, Nelson Joel Torres.

**CONVICTION AND SENTENCE AFFIRMED.**